UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOSES TUGUME, SR., ) | |
| ) | |
| Plaintiff, ) | Case No. 07 C 6211 |
| ) | |
| v. ) | Judge John W. Darrah |
| ) | |
| PHILLIP RATHKE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Moses Tugume, Sr., filed suit, *pro se*, against Defendant, Phillip Rathke, alleging a violation of his Fourth Amendment rights. Presently pending before the Court is Rathke's Motion for Summary Judgment. For the reasons stated in this order, the motion for summary judgment is denied.

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, by specific factual allegations, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

## FACTS

On December 3, 2006, Plaintiff, along with his wife, Rosita Medina, and their children, resided in an apartment on Washington Street in Mundelein, Illinois. (Def.s' 56.1(a)(3) Statement ¶ 5). On that day, several Mundelein police officers responded to a 911 call reporting a crime at Plaintiff's residence. (Id., ¶ 8). When the police officers arrived at the apartment building, they found Plaintiff, Plaintiff's minor step-daughter, and the minor's aunt in the parking lot. (Id., ¶ 9). Plaintiff was arrested in the parking lot and charged with criminally sexually assaulting his nine-year-old step-daughter. (Id., ¶ 10).

That same day, Rathke, a Mundelein patrol officer and evidence technician, was dispatched to the apartment for purposes of serving as an evidence technician with respect to the investigation of Plaintiff's alleged criminal sexual assault of his step-daughter. (Def.'s 56.1(a)(3) Statement ¶¶ 6, 11). When Rathke arrived at the residence, Plaintiff was already in police custody. (Id., ¶ 12). After confirming that no one else was inside the apartment, Police Officer Perdue stood in the doorway of the apartment to maintain security while Rathke conducted a search of the outside porch area and parking lot to determine whether there was a knife in the area consistent with the report given to the police by the victim's aunt. (Id., ¶ 13).

The Mundelein Police Department contacted Medina and requested her presence at the apartment. (Def.'s 56.1(a)(3) Statement ¶ 14). When Medina arrived at the apartment, the police informed her of the report of the criminal sexual assault of her minor daughter by Plaintiff, Medina's

2

husband. (Def.'s 56.1(a)(3) Statement ¶ 16). Medina informed Rathke that she was the tenant of the residence and the owner and joint possessor of the property located within the apartment, including a computer, lockbox, and Omega suitcase. (Id., ¶ 21). Rathke then requested Medina's verbal permission and her written consent to search the apartment and to seize evidence that might aid in the police investigation. (Id., ¶ 17). Medina gave her verbal and written consent to search the entire premises and to take any and all items or documents that might aid in the police investigation, including a computer, lockbox, and Omega suitcase. (Id., ¶¶ 18-19). Medina represented that she had the authority to consent and she freely gave her consent for the search and seizure of all evidence removed from the apartment. (Id., ¶ 23).

Medina specifically authorized Rathke to seize a computer and search its files, to seize a lockbox and Omega suitcase, to open the lockbox and suitcase, and to search and seize their contents. (Def.'s 56.1(a)(3) Statement ¶¶ 24-26). Plaintiff was not present during any portion of Rathke's search of the premises or seizure of evidence. (Id., ¶ 27).

On and before December 3, 2006, Medina resided with her two children and her husband at the time, Plaintiff, at the apartment in Mundelein. (Def.'s 56.1(a)(3) Statement ¶ 33). Medina was the sole signatory to the lease for the apartment. (Id., ¶¶ 34, 43). Medina jointly utilized all areas of the apartment and she jointly utilized the computer, lockbox, and suitcase. (Id., ¶ 44). The computer in the apartment was jointly used by Medina and Plaintiff. (Id., ¶ 35). The lockbox was purchased by Medina prior to her marriage to Plaintiff and was jointly used by both Medina and Plaintiff. (Id., ¶ 36). At the time that Medina gave her verbal consent to Rathke to search, open and seize the lockbox, Medina informed Rathke that she owned the lockbox and that the keys to the

3

lockbox might be in Plaintiff's possession. (Id., ¶ 37). Medina gave her verbal and written consent for Rathke to seize, open and search the suitcase that was found in the apartment. (Id., ¶ 38).

At no time was Medina subjected to any coercion by any member of the Mundelein Police Department, including Rathke, to provide her consent to search and seizure of evidence from the apartment. (Def.'s 56.1(a)(3) Statement ¶ 39). At the time that Medina gave her verbal and written consent, Plaintiff was not present because he had already been taken into police custody. (Id., ¶ 40). Prior to requesting Medina's consent, Rathke advised Medina of her right to refuse the search and seizure and to require the Mundelein Police Department to obtain a search warrant. (Id., ¶ 41).

On December 4, 2006, Plaintiff voluntarily signed a consent allowing the Mundelein Police Department to search computer files on the computer seized pursuant to Medina's consent on December 3, 2006. (Def.'s 56.1(a)(3) Statement ¶ 46).

Rathke's subsequent Evidence Technician Report states that he inspected the porch area and parking lot for a knife that may have been in Plaintiff's possession. After not finding a knife, his report indicates that he inspected the inside of the residence, starting with the northwest bedroom. In that room, Rathke used a blue light with an orange filter to check for semen stains. After finding what appeared to be semen stains, Rathke photographed the carpeting and took some carpeting samples containing the potential semen stains. Rathke also observed a black Omega suitcase in the bedroom closet. Rathke's report then states that he "waited in the apartment until [the victim's] mother, Rosita arrived." (Plaint.'s Response to Def.'s 56.3 Statements, Exhibit 1).

## ANALYSIS

Rathke moves for summary judgment, arguing that he conducted the search of the residence and the search and seizure of the computer, lockbox, and suitcase pursuant to the verbal and written consent of Medina, Plaintiff's wife.

The Fourth Amendment allows a police officer to conduct a warrantless search without probable cause if the officer obtains the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the common area with the absent co-occupant. *See Georgia v. Randolph*, 547 U.S. 103, 106 (2006); *United States v. Matlock*, 415 U.S. 164, 170 (1974).

Here, it is undisputed that Medina was a co-occupant in the apartment and had the authority to, and did, voluntarily consent to the search of the apartment and the search and seizure of certain items (of which she also represented she had owned or jointly utilized). Thus, it would appear that Plaintiff's claims fail. However, Plaintiff has demonstrated that a genuine issue of material fact exists as to whether Rathke conducted a warrantless search of the residence prior to obtaining Medina's consent to search the residence and seize certain property. Rathke's affidavit provided in support of his motion states that he "waited for [Plaintiff's wife/the victim's mother] to arrive before conducting the search of the inside of the premises." However, Rathke's Evidence Technician Report – in which Rathke states he searched the residence, obtained certain evidence, and waited in the apartment for Medina to arrive – directly contradicts this averment. Rathke does not attempt to resolve or address this apparent discrepancy in his reply brief; to the contrary, he continues to argue that "there is no genuine dispute to Officer Rathke's sworn statement that he did not conduct his search of the interior of Plaintiff's residence prior to gaining lawful consent of [Plaintiff's wife/the victim's mother]." (Rathke's Reply, p. 4). The parties were granted leave to

file an amended response and reply brief. In his amended reply brief, Rathke dismisses Plaintiff's "attempt to create a question of fact as to whether Officer Rathke conducted a search of premises prior to obtain Rosita Medina's consent;" arguing that Officer Rathke "clarified that he waited until Rosita Medina arrived and provided her consent before conducting his search of the interior of the premises and seizure of evidence." However, Rathke's affidavit does not "clarify" the inconsistency between his report and his affidavit – the affidavit does not address any inconsistency or error in the report in any manner. Furthermore, the parties do not address what effect, if any, this initial search had on the subsequent search and seizure that was made after obtaining the valid consent from a co-occupant.

In light of this genuine issue of material fact, and the lack of either party addressing the effect of this issue on the subsequent search and seizure, summary judgment cannot be granted in Rathke's favor.

Rathke also argues that he is entitled to qualified immunity because his conduct could reasonably have been thought to be consistent with the Fourth Amendment.

A police officer conducting a search is entitled to qualified immunity if "a reasonable officer could have believed" that the search was lawful "in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). In making this determination, the central question is whether someone in the police officer's position could reasonably but mistakenly conclude that his conduct complied with the Fourth Amendment. *Anderson*, 483 U.S. at 641.

The genuine issue of material fact regarding Rathke's initial search and the question of its effect on the subsequent search raise the same issues as to whether someone in Rathke's position

could reasonably but mistakenly conclude that his conduct complied with the Fourth Amendment. Thus, summary judgment based on qualified immunity is also denied at this time.

## CONCLUSION

For the foregoing reasons, Rathke's Motion for Summary Judgment is denied without prejudice to renew his motion.

Dated: 11-12-08

JOHN W. DARRAH
United States District Court Judge