# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOSES TUGUME, SR., ) | |
| ) | |
| Plaintiff, ) | Case No. 07 C 6211 |
| ) | |
| v. ) | Judge John W. Darrah |
| ) | |
| PHILLIP RATHKE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Moses Tugume, Sr., filed suit, *pro se*, against Defendant, Phillip Rathke, alleging a violation of his Fourth Amendment rights. On November 12, 2008, the Court denied, with leave to renew, Rathke's Motion for Summary Judgment, finding that a genuine issue of material fact existed as to when Rathke conducted a search of Plaintiff's residence due to an inconsistency or error in Rathke's Evidence Technician Report and affidavit. Presently pending before the Court is Rathke's Renewed Motion for Summary Judgment. For the reasons stated in this order, the Renewed Motion for Summary Judgment is granted.

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, by specific factual allegations, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

## FACTS[1]

On December 3, 2006, Plaintiff, along with his wife, Rosita Medina, and their children, resided in an apartment on Washington Street in Mundelein, Illinois. (Defs.' 56.1(a)(3) Statement ¶ 11). On that day, several Mundelein police officers responded to a 911 call reporting a crime at Plaintiff's residence. When the police officers arrived at the apartment building, they found Plaintiff, Plaintiff's minor step-daughter, and the minor's aunt in the parking lot. (*Id.*, ¶ 12). Plaintiff was arrested in the parking lot and charged with criminally sexually assaulting his nine-year-old step-daughter. (*Id.*, ¶ 13).

That same day, Rathke, a Mundelein patrol officer and evidence technician, was dispatched to the apartment for purposes of serving as an evidence technician with respect to the investigation of Plaintiff's alleged criminal sexual assault of his step-daughter. (Def.'s 56.1(a)(3) Statement ¶ 14). When Rathke arrived at the residence, Plaintiff was already in police custody. (*Id.*, ¶ 15). Rathke

---

[1]Plaintiff submitted proposed statements of undisputed facts pursuant to Rule 56.1(b)(3)(c) in an attempt to refute Rathke's motion. However, Plaintiff's proposed undisputed facts are not supported by citation to the record and/or constitute legal argument and conclusions of law. Plaintiff also filed a motion to file a belated affidavit to cure a defect in his response papers, specifically, to show that four hours elapsed between Rathke's arrival at the scene and Medina's appearance at the scene. This fact is undisputed. Accordingly, a belated affidavit is not required, and Plaintiff's motion is denied as moot.

2

was informed of victim's aunt's report that she found both Plaintiff and the minor victim naked in a bedroom closet. (*Id.*, ¶ 35). After confirming that no one else was inside the apartment, Police Officer Thomas Perdue stood in the doorway of the apartment to maintain security while Rathke conducted a search of the outside porch area and parking lot to determine whether there was a knife in the area consistent with the report given to the police by the victim's aunt. (*Id.*, ¶¶ 16, 64).

Based on the information he received at the scene, Rathke believed there existed independent probable cause to obtain a search warrant for the search of the premises based upon the victim's aunt's complaint that she found Plaintiff and the minor victim naked in the bedroom closet and that Plaintiff may have chased them with a knife. (Def.'s 56.1(a)(3) Statement ¶ 36). Since Rathke understood that Medina was shopping and would return home afterward, he made the decision to wait for her to arrive and provide her consent for the search and seizure of evidence as he anticipated that she would arrive and provide her consent before he could practically obtain a search warrant from a judge. (*Id.*, ¶ 37).

If Medina did not arrive or refused her consent for the search and seizure of evidence at the residence, Rathke planned to have a search warrant secured from a judge as soon as practicable based upon the independent evidence, including the detailed statements of the crime made by the minor victim and her aunt and the photographic evidence of the related injury. (Def.'s 56.1(a)(3) Statement ¶ 38).

Perdue waited, along with Rathke and other police officers, for Medina to arrive so that they could obtain her consent and he could assist Rathke with the search of the residence. (Def.'s 56.1(a)(3) Statement ¶ 65). Sergeant John Monahan also went to the scene and met Rathke and Perdue who were waiting for Medina so they could obtain her consent to search the residence. (*Id.*,

3

¶ 66). Monahan waited, along with Rathke and Perdue, for Medina to arrive at the residence. (*Id.*, ¶ 67). Perdue and Monahan were present when Rathke explained the situation to Medina and she consented to the search of the residence and Rathke began his search for evidence, including a blue light and orange filter search for evidence of residual semen. (*Id.*, ¶ 68).

That same day, Investigator Marc Hergott received a telephone call at home from dispatch to assist with the investigation of a sexual assault. Hergott proceeded to obtain a recorded statement from the minor victim detailing the alleged criminal sexual assault. (Def.'s 56.1(a)(3) Statement ¶ 44). Hergott prepared a report detailing specific statements of Plaintiff's specific conduct during the criminal sexual assault. (*Id.*, ¶ 45). Following the victim's statement, she was transferred to Condell Medical Center for a medical examination. The minor victim was diagnosed with a tear between her vagina and anus. (*Id.*, ¶ 46).

After the statement of the victim was completed, Hergott made the determination that an alternative light source ("ALS") search should be completed as part of the search of the residence and he made arrangements for the "Blue Max" ALS equipment to be transported to the residence. (Def.'s 56.1(a)(3) Statement ¶ 48). At approximately 10:30 p.m. that night, Hergott spoke with Rathke to inform him where to search for semen in the residence. (*Id.*, ¶ 49). At the time that Hergott spoke with Rathke, it was his understanding that Medina had already arrived at the residence and provided her consent for Rathke to begin searching the premises. (*Id.*, ¶ 50).

When Medina arrived at the apartment, the police informed her of the report of the criminal sexual assault of her minor daughter by Plaintiff, Medina's husband. (Def.'s 56.1(a)(3) Statement ¶ 17). The police informed Medina that they were waiting for her arrival so that they could request her permission and consent for the search of the residence and to seize evidence that might *aid* in

4

the investigation of the crime committed against her daughter. (*Id.*, ¶ 39).

Medina informed Rathke that she was the tenant of the residence and the owner and joint possessor of the property located within the apartment, including a computer, lockbox, and Omega suitcase. (*Id.*, ¶ 18). Rathke then requested Medina's verbal permission and her written consent to search the apartment and to seize evidence that might *aid* in the police investigation. (*Id.*, ¶ 19). Medina gave her verbal and written consent to search the entire premises and to take any and all items or documents that might *aid* in the police investigation, including a computer, lockbox, and Omega suitcase. (*Id.*, ¶ 20). The consent form indicates that Medina signed the form at 10:16 p.m. on December 3, 2006. (*Id.*, ¶ 51). Medina represented that she had the authority to consent and she freely gave her consent for the search and seizure of all evidence removed from the apartment. (*Id.*, ¶ 21). At no time did any of the police officers suggest to Medina that they had already searched the residence or obtained physical evidence from the residence prior to requesting her permission and consent to search the premises. (*Id.*, ¶ 40). Medina consented to the search to allow the police officers to conduct their search and seizure of evidence for purposes of investigating the reported crime committed by Plaintiff against her minor daughter. (*Id.*, ¶ 41). Medina was not aware of any search or seizure being conducted of the residence before she gave her consent to do so, and after she did consent, Rathke proceeded with the search of the residence. (*Id.*, ¶ 43). After Medina consented to the search of the residence, Rathke commenced the search, including a blue light search for semen evidence. (*Id.*, ¶ 57).

Medina specifically authorized Rathke to seize a computer and search its files, to seize a lockbox and Omega suitcase, to open the lockbox and suitcase, and to search and seize their contents. (Def.'s 56.1(a)(3) Statement ¶ 22). Plaintiff was not present during any portion of

5

Rathke's search of the premises or seizure of evidence. (*Id.*, ¶ 23).

Shortly after Hergott spoke with Rathke, Medina arrived at the police station having been transported by Officer Perdue. (Def.'s 56.1(a)(3) Statement ¶ 52). Medina was then taken to the Condell Medical Center where she was present for the medical examination and where she agreed to take photographs of the victim's vaginal tear. (*Id.*, ¶ 54). After the digital photographs were taken, Hergott transferred them to a compact disk and placed it into evidence. (*Id.*, ¶ 55).

On and before December 3, 2006, Medina resided with her two children and her husband at the time, Plaintiff, at the apartment in Mundelein. (Def.'s 56.1(a)(3) Statement ¶ 24). Medina was the sole signatory to the lease for the apartment. (*Id.*, ¶ 25). Medina jointly utilized all areas of the apartment and she jointly utilized the computer, lockbox, and suitcase. (*Id.*, ¶ 26). The computer in the apartment was jointly used by Medina and Plaintiff. (*Id.*, ¶ 27). The lockbox was purchased by Medina prior to her marriage to Plaintiff and was jointly used by both Medina and Plaintiff. (*Id.*, ¶ 28). At the time that Medina gave her verbal consent to Rathke to search, open and seize the lockbox, Medina informed Rathke that she owned the lockbox and that the keys to the lockbox might be in Plaintiff's possession. (*Id.*, ¶ 29). Medina gave her verbal and written consent for Rathke to seize, open and search the suitcase that was found in the apartment. (*Id.*, ¶ 30).

At no time was Medina subjected to any coercion by any member of the Mundelein Police Department, including Rathke, to provide her consent to search and seizure of evidence from the apartment. (Def.'s 56.1(a)(3) Statement ¶ 31). At the time that Medina gave her verbal and written consent, Plaintiff was not present because he had already been taken into police custody. (*Id.*, ¶ 32). Prior to requesting Medina's consent, Rathke advised Medina of her right to refuse the search and seizure and to require the Mundelein Police Department to obtain a search warrant. (*Id.*, ¶ 33).

On December 4, 2006, Plaintiff voluntarily signed a consent allowing the Mundelein Police Department to search computer files on the computer seized pursuant to Medina's consent on December 3, 2006. (Def.'s 56.1(a)(3) Statement ¶ 34).

On December 19, 2006, Rathke prepared a report regarding the search of the premises and the seizure of evidence. (Def.'s 56.1(a)(3) Statement ¶ 58). Rathke's report states that he inspected the porch area and parking lot for a knife that may have been in Plaintiff's possession. After not finding a knife, his report indicates that he inspected the inside of the residence, starting with the northwest bedroom. In that room, Rathke used a blue light with an orange filter to check for semen stains. After finding what appeared to be semen stains, Rathke photographed the carpeting and took some carpeting samples containing the potential semen stains. Rathke also observed a black Omega suitcase in the bedroom closet. Rathke's report then states that he "waited in the apartment until [the victim's] mother, Rosita arrived." (Plaint.'s Response to Def.'s Original 56.3 Statements, Exhibit 1).

When Rathke prepared his report, he made a mistake in the order in which he described the events. (Def.'s 56.1(a)(3) Statement ¶ 58). Rathke's reference to Medina's arrival in the middle of the report does not accurately set forth the chronology of the search of the premises in relation to her arriving and providing her consent. (*Id.*, ¶ 59). When Rathke prepared his report, he was concerned with narrating the detailed description of his search for forensic evidence and then he went on to describe the search and seizure of specific large items, such as the lockbox, computer, and suitcase. (*Id.*, ¶ 60). Since Medina actually assisted with and answered questions about the search and seizure of certain large items, Rathke referenced her arrival and consent in that portion of his report. (*Id.*, ¶ 61). In order to accurately set forth the chronology of events, Rathke's description of Medina's

7

arrival and consent should have preceded his description of his detailed search for forensic evidence. (*Id.*, ¶ 62).

## ANALYSIS

Rathke moves for summary judgment, arguing that he conducted the search of the residence and the search and seizure of the computer, lockbox, and suitcase pursuant to the verbal and written consent of Medina, Plaintiff's wife.

The Fourth Amendment allows a police officer to conduct a warrantless search without probable cause if the officer obtains the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the common area with the absent co-occupant. *See Georgia v. Randolph*, 547 U.S. 103, 106 (2006); *United States v. Matlock*, 415 U.S. 164, 170 (1974).

Here, it is undisputed that Medina was a co-occupant in the apartment and had the authority to, and did, voluntarily consent to the search of the apartment and the search and seizure of certain items (of which she also represented she had owned or jointly utilized). Plaintiff argues, relying on Rathke's report, that Rathke conducted an illegal search and seizure of the residence before Medina consented to the search and seizure and that Rathke used evidence obtained during the initial illegal search to coerce Medina into giving her consent. However, Rathke has explained the discrepancy in his report and has provided further undisputed facts by affidavit of Medina and other police officers involved in the investigation to explain the discrepancy and to provide support for his amended affidavit. Plaintiff has not disputed these undisputed facts except to argue that one police officer is likely to commit perjury in furtherance of a Fourth Amendment violation by another officer. However, Plaintiff's argument does not address Medina's affidavit that supports Rathke's explanation of the events and her voluntary consent to the search and seizure. Plaintiff's attempt to

8

refute the other police officers' affidavits relies not on any facts or factual dispute, but on the unsupported premise that the police officers will perjure themselves for a fellow officer. *See Segura v. United States*, 468 U.S. 796, 812 (1984) ("We are unwilling to believe that officers will routinely and purposefully violate the law as a matter of course.").

Nor does Plaintiff provide any evidence to contradict Medina's own averments that she voluntarily consented to the search and seizure and was not coerced in any manner in providing her consent. Based on the undisputed facts, Rathke has demonstrated that he conducted a warrantless search after obtaining Medina's voluntary consent to search and seize certain property following Plaintiff's arrest.

Plaintiff has also not demonstrated an actual injury for purposes of his Section 1983 claim. In order to recover compensatory damages for an illegal search pursuant to Section 1983, a plaintiff must demonstrate that the search was unlawful and that it caused him an actual compensable injury. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986). An actual compensable injury does not include being convicted and imprisoned. *See Heck v. Humphrey*, 512 U.S. 477, 487 n. 7 (1994). Plaintiff has not demonstrated an actual injury and his only attempt in refuting the motion for summary judgment as to this issue is to label the argument "laughable."

Moreover, even if Plaintiff could demonstrate a genuine issue of material fact as to whether Rathke initially conducted an illegal search, he has not demonstrated that such an illegal search tainted Medina's subsequent voluntary consent to the search of the residence and seizure of evidence. Thus, Plaintiff has failed to demonstrate any actual injury as a result of the alleged initial illegal search.

## CONCLUSION

For the foregoing reasons, Rathke's Renewed Motion for Summary Judgment is granted.

Plaintiff's motion to file a belated affidavit to cure a defect in his response papers is denied as moot.

Dated: 4-2-09

JOHN W. DARRAH
United States District Court Judge